**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**SHELIA O'BANNER**                                                    **PLAINTIFF**

**V.**                                                 **CAUSE NO. 3:16-CV-00347-CWR-LRA**

**METROPOLITAN LIFE INSURANCE**                          **DEFENDANT**
**COMPANY**

## <u>ORDER</u>

Before the Court is defendant's motion for judgment on the administrative record or in the alternative summary judgment pursuant to rule 56. Docket No. 9. Plaintiff filed her response, Docket Nos. 12 and 13, to which defendant has replied. Docket No. 16. Having reviewed the briefing and the applicable law, the Court is ready to rule.

## I.      Factual and Procedural History

O'Banner is a former full time Technician for Nissan North America, Inc. ("Nissan"). Nissan purchased from defendant Metropolitan Life Insurance Company ("MetLife") a group policy for disability income insurance, providing long term benefits coverage for its employees. Docket No. 11 at 1042. Plaintiff was at all relevant times insured under the long term disability plan. Docket No. 1 at 2.

On May 26, 2011, O'Banner became unable to perform her job due to lower back pain and pain down her left side. Docket No. 11 at 763. She filed a claim for long term disability benefits under the group plan on October 5, 2011. *Id.* She attached to her claim an attending physician's statement signed by Dr. John Davis, explaining that O'Banner was suffering from a lumbar herniated disc for which she would undergo surgery. *Id.* at 770-72. MetLife approved plaintiff's claim issuing her benefits effective November 17, 2011. *Id.* at 687.

On March 8, 2012, Dr. Davis performed spinal surgery on O'Banner to relieve nerve compression and radicular pain. *Id*. at 535-37. That same month MetLife began deducting $1,301.00 from O'Banner's monthly benefits. Docket No. 13 at 16. That amount reflected MetLife's estimate of the value of Social Security Disability benefits plaintiff was eligible to receive. *Id.* MetLife argues that it was entitled to make these deductions because plaintiff failed to apply for Social Security benefits, as required by the disability plan. Docket No. 10 at 13. O'Banner requested that MetLife reconsider the monthly deductions from her benefits. Docket 11 at 322-23. MetLife accepted her request as an appeal of the off-set and conducted a claim review. *Id.* at 313. Defendant upheld the offset for estimated Social Security Disability benefits and continued to withhold $1,301.00 monthly from plaintiff's benefits. *Id.* at 286-91.

During O'Banner's follow-up visit six weeks after her surgery, Dr. Davis noted her continued left side lower body pain and he ordered her to remain off work until she could be evaluated by physical medicine specialist. Docket 11 at 538. Over the following months plaintiff met with Rahul Vohra, M.D., Alice Messer, FNP-BC, and Jeffrey Summers, M.D. to receive evaluation and treatment for her pain. Docket 11 at 423-29; 487-89; 545-47. On July 30, 2012 Nurse Messer and Dr. Vohra collaboratively assigned O'Banner a rating of 6% permanent impairment. On September 7, 2013, Nurse Messer reported O'Banner's functional capacity evaluation had been completed, and released her to light level duty to include "occasional elevated work, occasional forward bending, frequent standing, frequent sitting, frequent walking, occasional crouching, occasional kneeling, occasional stair climbing." Docket 11 at 487.

On September 11, 2014, MetLife notified plaintiff that she no longer satisfied the definition of disability under Nissan's plan, and it terminated her long term disability benefits effective September 12, 2014. Docket No. 11 at 219.

On August 17, 2015, O'Banner submitted to MetLife her psychological evaluation from Dr. Angela J. Koestler, diagnosing her with "Adjustment Disorder with Depressed Mood;" and she asked MetLife to reinstate her long term disability benefits. *Id.* at 120-23. By letter dated October 21, 2015, MetLife informed plaintiff that it had conducted a full review of her claim and denied her petition for reinstatement of her long term disability benefits. *Id.* at 19-23.

## II.    Legal Standard

"The summary judgment standard for ERISA [Employee Retirement Income Security Act of 1974] claims is unique because the Court acts in an appellate capacity reviewing the decisions of the administrator of the plan." *McFadden v. Prudential Ins. Co. of Am.*, 877 F. Supp. 2d 481, 485 (S.D. Miss. 2012) (citation omitted). "Eligibility for benefits under any ERISA plan is governed in the first instance by the plain meaning of the plan language." *Threadgill v. Prudential Securities Group, Inc.*, 145 F.3d 286, 292 (5th Cir. 1998) (citation omitted). "[A] person denied benefits under an employee benefit plan [may] challenge that denial in federal court." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008).

When the underlying employee benefit plan "undisputedly gives the Plan Administrator the discretionary authority to construe the Plan's terms and to render benefit decisions, we reverse the Plan Administrator's denial of benefits . . . only if it abused its discretion." *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 246 (5th Cir. 2009). Under this standard "[a] court must give deference to the decision of the plan administrator and may not substitute its judgment for the decision of the fiduciary." *Killen v. Reliance Standard Life Ins. Co.*, 776 F.3d 303, 307 (5th Cir. 2015) (quotation marks and citation omitted).

Courts "reach a finding of abuse of discretion only where 'the plan administrator acted arbitrarily or capriciously.'" *Holland*, 576 F.3d at 246 (quoting *Meditrust Fin. Servs. Corp. v.*

*Sterling Chems., Inc.*, 168 F.3d 211, 214 (5th Cir. 1999)). "A decision is arbitrary only if made without a rational connection between the known facts and the decision or between the found facts and the evidence." *Meditrust*, 168 F.3d at 215 (quotation marks and citation omitted). "Restated, the question is whether [MetLife's] decision was supported by substantial evidence, 'not [whether] substantial evidence (or for that matter, even a preponderance) exists to support the employee's clam of disability.'" *McFadden*, 877 F. Supp. 2d at 486 (quoting *Ellis v. Liberty Life Assur. Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004)). "We are aware of no law that requires a district court to rule in favor of an ERISA plaintiff merely because he has supported his claim with substantial evidence, or even with a preponderance." *Ellis*, 394 F.3d at 273.

Judicial "review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness—even if on the low end." *Holland*, 576 F.3d at 247 (quotation marks and citation omitted).

"A conflict of interest exists when the plan administrator both evaluates claims for benefits and pays benefits claims." *Burell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 138 (5th Cir. 2016) (quotation marks and citation omitted). "Quite simply, conflicts are 'but one factor among many that a reviewing judge must take into account'" in determining whether an abuse of discretion occurred. *Holland*, 576 F.3d at 247-48 (quoting *Glenn*, 554 U.S. at 116).

## III.   Discussion

O'Banner brought the present suit to challenge defendant's determinations to (1) reduce her monthly disability benefits by $1,301.00 from March 2012 through September 2014; and (2) terminate her disability benefits in September 2014. MetLife asks for summary judgment upholding both decisions. MetLife is the plan administrator and the plan has given it

4

discretionary authority to construe the plan and render benefits decisions, so it is subject to an abuse of discretion standard.

### A.    Monthly Deductions

The disability plan, under which O'Banner received long term disability benefits, provided in part:

> If there is a reasonable basis for You to apply for benefits under the Federal Social Security Act, We expect You to apply for them . . . . [W]ithin 6 months following the date You became Disabled, You must send Us Proof that You have applied for Social Security benefits . . . . If You do not satisfy the above requirements, We will reduce Your Disability benefits by such estimated Social Security benefits starting with the first Disability benefit payment coincident with the date You were eligible to receive Social Security benefits.

Docket 11 at 1287-88.

By letter dated July 30, 2014, MetLife notified plaintiff of its decision to uphold its original determination to deduct a Social Security Disability Income estimation. The letter cited O'Banner's failure to "provide proof of application for SSDI benefits within six months following the date she became disabled," as justification for the offset beginning in March 2012 to her long term disability benefits. The administrative record reflects that plaintiff did not apply for Social Security benefits until September 2014. *Id.* at 165-67. In the absence of proof that plaintiff applied for Social Security Disability Income within the prescribed time frame, the plain language of the long term disability plan allowed MetLife to deduct an estimated amount of monthly benefits. MetLife communicated this provision to plaintiff several times before it began withholding. Docket 11 at 287; 673; 688-89.

Summary judgment is appropriate to uphold MetLife's monthly deduction of $1,301.00 from plaintiff's disability benefits from March 2012 through September 2014.

**B.     Termination of Disability Benefits**

On March 27, 2012, MetLife notified O'Banner that to continue receiving benefits after her first year under the plan—ending November 16, 2012—she had to satisfy a different definition of disability. Docket No. 11 at 592-93. The definition applicable to plaintiff from the commencement of her benefits on November 17, 2011 until November 16, 2012 required claimants to be unable to earn 60% of pre-disability earnings at their own job—a so called "own occ." policy. *Id.* The definition of disability applicable to plaintiff beginning November 17, 2012 required claimants to be unable to earn 60% of pre-disability earnings at any job—an "any occ." policy. *Id.* Plaintiff concedes this change in coverage took place, but argues that she is unable to earn 60% of her pre-disability earnings—$23.22 an hour—at any occupation. Docket 13 at 5.

The change to "any occ." after plaintiff's first year of benefits required that she be "unable to earn more than 60% of [her] Predisability Earnings from any employer in [her] Local Economy at any gainful occupation for which [she was] reasonably qualified taking into account [her] training, education and experience." Docket 11 at 219. On September 11, 2014, defendant indicated to plaintiff that her benefits under the plan would terminate the following day. *Id.* Defendant stated that its decision was based on (1) an independent medical review of plaintiff's entire claim file conducted by Dr. Neil McPhee; and (2) an employability assessment and a labor market analysis. *Id.* at 221.

On August 21, 2014 Dr. McPhee communicated to MetLife that he found plaintiff to have the following physical capabilities: "lifting up to 20 pounds occasionally and 10 pounds frequently, bending occasionally, crouching occasionally, climbing occasionally, and standing/walking frequently . . . . [N]o limitations to sitting or use of [her] upper extremities." *Id.*

Based on that information MetLife determined that O'Banner could perform sedentary or light physical exertion. *Id.* at 221-22.

MetLife then identified two positions for which plaintiff was qualified: (1) Healthcare Facility Administrator—plaintiff received a Bachelor's degree in Healthcare administration in December 2013—and (2) Office Manager. *Id.* at 222. Earnings for the 10th percentile of qualified applicants, which MetLife identified as more indicative of wages for entry level work, were $23.70 an hour and $15.31 an hour respectively. Both wages are more than 60% of the $23.22 hourly wage O'Banner received working at Nissan.

Plaintiff's primary objection to defendant's determination concerns its failure to perform in home interviews or functional capacity exams. Docket 13 at 5. Plaintiff argues that these were both required by the following plan language:

> To verify that you continue to be disabled without any interruption after our initial approval, we *may* periodically request that you send us proof that you continue to be disabled. Such proof *may* include physical exams, exams by independent medical examiners, in home interviews, or functional capacity exams as needed.

*Id.* (emphasis added). Plaintiff is wrong. That language is permissive, not mandatory.

Plaintiff also objects to Dr. McPhee's reliance upon a functional capacity exam from September 2012, arguing that he should have instead relied on a more recent functional capacity exam and that in fact information which contradicted the 2012 exam was available to MetLife at the time it sought Dr. McPhee's opinion. The record reflects that Dr. McPhee used much more than the 2012 functional capacity exam to arrive at his medical opinion. Docket 11 at 787-802.

As in *Burrell*, O'Banner "has failed to point to anything in the record that indicates [MetLife's] conflict of interest actually affected the denial of [her] claim." 820 F.3d at 139. Summary judgment is appropriate to uphold the termination of plaintiff's long term disability benefits.

**IV.      Conclusion**

Although there is a conflict of interest present, as MetLife both evaluates claims and pays benefits under the plan, its decisions to reduce and terminate O'Banner's benefits were not arbitrary or capricious. Defendant's motion for summary judgement is granted. A separate final judgment shall issue in accordance with Rule 58 of the Federal Rules of Civil Procedure.

**SO ORDERED**, this the 13th day of March, 2017.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE